MANUFACTURERS' LAND AND IMPROVEMENT COMPANY,
PROSECUTOR, v. BOARD OF COMMERCE AND NAVIGA-
TION AND SOUTHWARK MANUFACTURING COMPANY,
DEFENDANTS.

Argued June 5, 1923—Decided June 26, 1923.

The established rule in relation to side lines of riparian grants,
founded on *Delaware, Lackawanna and Western Railroad* v.
*Hannon,* 37 *N. J. L.* 276, that where the water front is practically
straight, such side lines are to run at right angles to it, and if
curved, then in such manner as to divide the foreshore ratably
among the littoral owners, is not to be disregarded or modified
merely because a riparian owner has seen fit to subdivide his land
and sell it in parcels whose side lines do not run down to the
shore at right angles thereto.

On *certiorari.*

Before Justices TRENCHARD, PARKER and BERGEN.

For the prosecutor, *Samuel B. Scott,* of the Pennsylvania
bar (*Wescott & Weaver,* on the brief).

For the defendant board, *Harrison P. Lindabury* (*Thomas
F. McCran,* attorney general, on the brief).

For Southwark Manufacturing Company, *Patrick H.
Harding.*

The opinion of the court was delivered by

PARKER, J.    Prosecutor is the owner of a tract of land in
Camden, bordering on the east side of the Delaware river,
and claims the usual rights of a riparian owner under the laws
of this state.   Adjoining prosecutor's lands on the south are
lands of the Southwark Manufacturing Company, and ad-
joining that company's land on the south, and bounded
southerly by the north line of Jefferson street, actual or pro-
duced, is a tract belonging to the Armstrong Cork Company.

Both these companies hold under the prosecutor, directly or by mesne conveyances.

The attack made under the writ of *certiorari* in this case relates to proposed riparian grants by the board of commerce and navigation to the Armstrong and Southwark companies, especially to the latter, prosecutor's claim being that the intended grant to the Southwark company includes land lying "in front of" prosecutor's lands in the sense intended by the statutes relating to riparian rights (*Comp. Stat., p. 4382 et seq.*), and that such proposed grant is unwarranted by law, first, because the title of all the parties to the tracts above mentioned is derived from grants by the state to the prosecutor wherein the state covenanted not to grant or lease to any other person or corporation in front of the land described; and, secondly, because of the statutory provision (*Comp. Stat., p. 4395, pl. 38*) that a lease or grant to any other than the shore owner is to be made only after six months' notice to such owner, during which time he has the prior option to take out the grant himself. As a matter of fact, all three corporations have applied for grants to a new pier line, and the practical as well as the legal question is with respect to the location and amount of land under water to be granted to each. The board, before executing the three grants (which are still undelivered) consulted counsel, who advised, among other things, that although the three tracts in respect of which these owners seek riparian grants to the new line established further out in the river, are themselves held under a former riparian grant to the prosecutor, who improved and filled in and resold in part, yet for the purpose of dealing with the additional grants now in question, said tracts should be considered to have the status of original *ripa*. This view is not questioned by either side, and we are content to accept it for the purposes of this case.

The dispute comes about in this way: Prosecutor in selling off parts of its original large grant adopted a layout in which the side lines of the river front tracts did not run parallel. This may have been caused by the fact that the former exterior pier line does not run normally to the layout

of the Camden streets, but at an angle of about twenty degrees, so that taking Jefferson street as running east and west (which is substantially correct), the pier line runs about north twenty degrees west, and the new pier line nearly, but not quite, parallel with it and about seventy-five feet further out. The side lines of the Armstrong company run, as we have said, parallel with Jefferson street; those of the prosecutor run about at right angles to the water front; so that the side lines of the Southwark company converge as they approach the river, and that tract narrows from about four hundred feet at the rear to less than one hundred and twenty feet of river front on the old exterior line. It will readily be seen that if the new Southwark grant should be delimited by production of the side lines, the new frontage of that company would be still less than at present. On this point the advice of the board's counsel was substantially this: That although the well recognized general rule in apportioning water front as between owners abutting thereon, as laid down in D., L. & W. R. R. Co. v. Hannon, 37 N. J. L. 276, and followed in Bradley v. McPherson, 58 Atl. Rep. 105, is by extending from the ends of the side lines at right angles to the water front if the latter be straight or substantially so, and in case of a decided convexity or concavity of the shore, then ratably between the riparian owners, yet inasmuch as prosecutor had created an unusual situation by plotting the converging side lines, and the strict application of the rule would probably lead to inconvenience in user of the wharves of the other owners, therefore he advised that the side lines of the Armstrong Cork Company tract, contiguous to Jefferson street, "should be treated as perpendicular to the shore line, and the extensions should all go out accordingly." We confess that we are unable to concur in this reasoning or in the result. The effect of adopting the method proposed is to produce the two side lines of the Armstrong company without change of direction, to the new outer line, and, of course, twenty degrees off the perpendicular to the water front. This would inflict on the Southwark company the same injury of which prosecutor complained, i. e., of taking some of the

land under water "in front of" the Southwark land. To compensate for this, the northerly side line of Southwark is not to be produced, but bent parallel with Jefferson street, so that that company's front shall not be diminished; and all the curtailment of front is imposed on prosecutor.

There seems to be some theory of estoppel as against prosecutor intimated in the opinion of counsel; but we are unable to make out any estoppel or similar equity. Prosecutor owned all the basic land and was entitled to divide it for conveyance as it saw fit, even to cutting off its grantees from any water front whatever, by reserving a narrow strip between them and the water. In conveying to the water, prosecutor was entitled to rely on, and its grantees were charged with knowledge of, the established rule that in wharfing out, the right angle principle was applicable. As was said by Chief Justice Beasley in the Hannon case, "It is not of the least importance in what direction the owner of the upland has seen fit to run the lines of his property to the shore. Whether such lines approach the water in a course rectangular to the shore line, or run obliquely to such base, the right of riparian extension is unaffected by the difference." 37 *N. J. L.* 277. Hence the Southwark company could not expect more than an extension of its side lines at right angles to the existing front, in case of the establishment of a new exterior line. The Cork company was a contestant before the board, but is not before us in this cause, and so we refrain from passing on its claims; but in our view, one thing is plain, and that is that the well settled right angle rule should not be laid aside for any such reason as that relied on by the board in this case.

It may be as well to add that the cases of *Stockham* v. *Browning,* 18 *N. J. Eq.* 390; *Lowndes* v. *Wickes* (*Conn.*), 36 *Atl. Rep.* 1072, and *Dewey Land Co.* v. *Stevens,* 83 *N. J. Eq.* 656, 664, relied on in the opinion referred to, seem not at all in point. The first two merely apply the doctrine of practical location to shore front property by confirming physical boundaries adopted by the parties; the last deals with conflicting claims of title arising after erosion and subsequent accre-

tion. The concurring opinion of one of the judges in that case has, of course, no binding force. This litigation was continued in the federal courts '(*Nirdlinger* v. *Stevens*, 262 *Fed. Rep.* 591; *Stevens* v. *Arnold*, 43 *Sup. Ct. Rep.* 560), but the final result exhibits nothing relevant to the present contro· versy so far as we can see.

The resolution of the board, calling for the issue of the grants. as above indicated, will be set aside. As the board is a state agency no costs should be allowed. *Board of Tenement House Supervision* v. *Schlechter*, 83 *N. J. L.* 88.